**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 13, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BLUE MOUNTAIN ENERGY; OLD
REPUBLIC INSURANCE
COMPANY, INCORPORATED,

      Petitioners,

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT
OF LABOR; TERRY O.
GUNDERSON,

      Respondents.

No. 14-9561

---

**APPEAL FROM THE BENEFITS REVIEW BOARD**
**(Benefits No. 13-0412 BLA)**

---

Mark E. Solomons (Laura Metcoff Klaus, with him on the briefs), of Greenberg
Traurig LLP, Washington D.C., for Petitioners.

Barry H. Joyner, Attorney (M. Patricia Smith, Solicitor of Labor; Rae Ellen
James, Associate Solicitor; Gary K. Stearman, Counsel for Appellate Litigation,
with him on the brief) of United States Department of Labor, Office of the
Solicitor, Washington, D.C., for Respondent, Director, Office of Workers'
Compensation Programs, United States Department of Labor.

Anne Megan Davis (Thomas E. Johnson with her on the brief), of Johnson, Jones,
Snelling, Gilbert & Davis, PC, Chicago, Illinois, for Respondent, Terry
Gunderson.

---

Before **BRISCOE, HOLMES** and **MORITZ**, Circuit Judges.

**BRISCOE**, Circuit Judge.

Blue Mountain Energy (Blue Mountain) petitions for review of a Benefits Review Board (the Board) decision affirming an award of black lung benefits to Terry Gunderson. An administrative law judge (ALJ) originally denied benefits under the Black Lung Benefits Act (BLBA), 30 U.S.C. §§ 901–945, and Gunderson appealed to the Board and then to this court. We remanded for further proceedings because the ALJ did not sufficiently explain the basis for the denial. See Gunderson v. U.S. Dep't of Labor, 601 F.3d 1013, 1027 (10th Cir. 2010) (Gunderson I). The ALJ again denied benefits, and the Board vacated and remanded the ALJ's decision because it did not comply with our remand. On the second remand, the ALJ awarded benefits, and the Board affirmed.

Blue Mountain petitions for review, arguing that the ALJ violated the Administrative Procedure Act (APA). Specifically, Blue Mountain contends the ALJ gave the preamble to the regulations redefining compensable pneumoconiosis in 20 C.F.R. § 718.201[1] the force and effect of law, even though the preamble had not been subject to APA notice and comment. Blue Mountain also contends its

---

[1] The preamble at issue in this case can be found at 65 Fed. Reg. 79920–80045 (Dec. 20, 2000).

rights under the APA were violated when the ALJ refused to reopen the proceedings to allow it to submit evidence challenging the medical literature cited in the preamble. Exercising jurisdiction pursuant to 33 U.S.C. § 921(c), as incorporated into the BLBA via 30 U.S.C. § 932(a), we deny Blue Mountain's petition.

## I

Fourteen years ago, Terry Gunderson filed a claim under the BLBA, seeking benefits for his chronic obstructive pulmonary disease (COPD). He has been in litigation with his former employer, Blue Mountain, ever since. The parties' dispute centers on whether Gunderson's COPD was caused at least in part by his working as a coal miner for more than thirty years, or whether, as Blue Mountain argues, his COPD was caused solely by his smoking a pack of cigarettes a day for thirty-four years.

*Statutory and regulatory background*

The BLBA provides benefits to "to coal miners who are totally disabled due to pneumoconiosis and to the surviving dependents of miners whose death was due to such disease." 30 U.S.C. § 901(a). Pneumoconiosis is defined as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b). "To obtain benefits under the Act, a miner must demonstrate that he satisfies three conditions: (1) he or she suffers from pneumoconiosis; (2) the

3

pneumoconiosis arose out of coal mining employment; and (3) the pneumoconiosis is totally disabling." Energy W. Mining Co. v. Oliver, 555 F.3d 1211, 1214 (10th Cir. 2009).

"[P]ursuant to its authority to implement the [BLBA], see [30 U.S.C.] § 936(a), the Department of Labor has promulgated regulations interpreting § 902(b)'s definition of pneumoconiosis to encompass two distinct types of compensable lung diseases: clinical pneumoconiosis and legal pneumoconiosis." Gunderson I, 601 F.3d at 1018. The regulations state that clinical pneumoconiosis "consists of those diseases recognized by the medical community as pneumoconioses, i.e., the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment," including several enumerated diseases. 20 C.F.R. § 718.201(a)(1). Legal pneumoconiosis is defined more broadly as "any chronic lung disease or impairment and its sequelae arising out of coal mine employment," which "includes, but is not limited to, any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment." 20 C.F.R. § 718.201(a)(2). "[A] disease 'arising out of coal mine employment' includes any chronic pulmonary disease or respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 718.201(b).

4

*Procedural background*

In the initial hearing on Gunderson's claim, both sides presented expert testimony addressing the cause of his condition. Not surprisingly, the experts reached different conclusions. The ALJ found the experts well qualified and their reports both well reasoned and well documented. Finding the opinions to be "evenly balanced" and deserving "equal weight," the ALJ concluded that Gunderson had failed to carry his burden of proof and denied his claim for benefits. Pet. App. at 30. The Board affirmed. Gunderson then appealed to this court and contended the ALJ failed to comply with 5 U.S.C. § 557(c)(3)(A) of the APA because the ALJ did not provide "the reasons or basis" for rejecting his legal pneumoconiosis. We reversed and remanded and instructed the ALJ to provide "a more detailed, scientifically-grounded explanation" for weighing the expert testimony presented. Gunderson I, 601 F.3d at 1024, 1027. In doing so, we noted that "an ALJ has the benefit of a substantial inquiry by the Department of Labor" in resolving disputes concerning the existence and cause of pneumoconiosis. As an example, we cited the Department's regulations which characterize pneumoconiosis "as a latent and progressive disease which may first become detectable only after the cessation of coal mine dust exposure." Id. at 1024–25 (quoting 20 C.F.R. § 718.201(c)).

On the first remand, the ALJ stated that "the Circuit Court has required that the undersigned choose one party's argument over the other" and that "Drs.

5

Repsher, Renn, and Cohen have given extensive explanations as to their reasoning in this case." Pet. App. at 79–80. The ALJ noted that Gunderson has "significant blood gas abnormality," which Dr. Cohen attributed "in part to coal dust exposure," while Dr. Renn stated "five enumerated factors" that could be the cause of the abnormality. Id. at 80. Overall, the ALJ found "Dr. Renn's opinion to be persuasive" because "Dr. Cohen has not adequately explained why these other facts are not responsible for the blood gas abnormality." Id. Thus, the ALJ concluded that Gunderson "has failed to establish that he is totally disabled by a respiratory impairment due to [coal workers' pneumoconiosis]." Id.

Gunderson appealed to the Board, which vacated and remanded the case to the ALJ. Among other issues, the Board stated that the ALJ "conflated the issues of legal pneumoconiosis, total respiratory disability and disability causation, and misconstrued the Tenth Circuit's remand instructions," which "did not require that the administrative law judge choose one party's argument over the other's, but instructed him to fully explain his reasoning and offer a scientific basis for his evaluation and weighing of the conflicting medical opinions." Id. at 85. The Board directed the ALJ on remand to "evaluate all of the medical opinions of record; determine if they are adequately reasoned and documented; assign each opinion appropriate weight; and provide valid reasons for each of his credibility determinations, while clearly explaining his rationale as to each medical expert." Id. at 86–87. In a footnote to these instructions, the Board stated that "[t]here is

6

no merit to claimant's assertion that an administrative law judge is required to determine the credibility of an expert's opinion in light of the preamble to the revised regulations." Id. at 87 n.5. However, the Board stated that it is "permissible for an administrative law judge to discuss the preamble to the regulations when weighing the medical opinions relevant to the issue of legal pneumoconiosis" and that this court had acknowledged the Department of Labor's "substantial inquiry" on the subject. Id.

On the second remand, the ALJ concluded that Gunderson had demonstrated that he had legal pneumoconiosis and that he was totally disabled by it, entitling him to benefits. After conducting an extensive review of the medical evidence, the ALJ concluded that "[a]ll the physicians' reports in the record are well documented, relying on Claimant's employment, social, and medical histories as well as extensive medical testing." Id. at 112. However, the ALJ concluded that "the brevity of Dr. Shockey's report [finding legal pneumoconiosis] causes it to be less probative in light of the comprehensiveness of the other medical opinions of record." Id. at 112–13. The ALJ further stated that he found "Dr. Repsher's opinion that Claimant's COPD is not related to coal dust exposure based predominately, if not totally, on articles Dr. Repsher cites for the proposition that coal dust exposure is significantly less likely to cause COPD than cigarette smoking to be entitled to less weight because it does not focus on Claimant's specific symptoms and conditions, but on statistics." Id. at 113.

7

Moreover, the ALJ noted that Dr. Repsher did not "address whether coal dust exposure and smoking could have been additive causes of Claimant's lung disease, an etiology clearly adopted in the Preamble to the Regulations." Id. The ALJ also gave Dr. Renn's opinion "that he could distinguish between coal dust induced COPD and that caused by smoking" less weight because Dr. Cohen had explained that one measurement used by Dr. Renn "has been found to have no useful interpretation" and that another measurement Dr. Renn used had been adjusted in a manner not in accordance with American Medical Association guidance. Id.

Overall, the ALJ concluded that he found "most probative the opinions of Drs. Cohen and Parker" because "Drs. Parker and Cohen more thoroughly evaluated Claimant's specific condition when determining that Claimant's obstructive lung disease was caused by coal mine dust exposure." Id. The ALJ noted that Dr. Parker had "specifically linked Claimant's symptoms to the documented effects of coal mine dust exposure and cited to literature that has been approved by the Department in the Preamble" and that Dr. Parker's "explanation that Claimant's lung function continued to deteriorate after the cessation of both smoking and coal mining reflects the acknowledged view that pneumoconiosis is a latent and progressive condition." Id.

Blue Mountain moved for reconsideration, requested that the ALJ reopen the record "to permit it to respond with proof to the statements relied on by the

8

ALJ," and argued that the ALJ had improperly determined the date on which benefits should commence.[2] Id. at 118. The ALJ denied Blue Mountain's request to reopen the record, noting that the Board "has held that the Preamble does not constitute evidence outside the record with respect to which the administrative law judge must give notice and an opportunity to respond," but agreed that he had erred in determining the benefits award date and modified the order accordingly. Id. at 131–32.

Blue Mountain then appealed to the Board, which upheld the ALJ's third and final decision. The Board concluded that the ALJ had not "applied an incorrect legal standard in determining whether claimant established the existence of legal pneumoconiosis" and had "permissibly relied on the preamble to the revised 2001 regulations as a statement of medical principles accepted by the Department of Labor when it revised the definition of pneumoconiosis to include obstructive impairments arising out of coal mine employment." Id. at 143–44. The Board reiterated that "the preamble does not constitute evidence outside the record with respect to which the administrative law judge must give notice and an opportunity to respond." Id. at 144. The Board also concluded that the ALJ had

---

[2] Blue Mountain also requested that the record be reopened in a letter to the ALJ dated September 25, 2012, prior to briefing on the remand. Pet. App. at 89–90. The ALJ denied that request obliquely by stating that the record was open for submission of briefs. Gunderson Br., Addendum 3. Blue Mountain renewed that request in its brief on second remand. Pet. App. at 93.

9

not erred in his analysis of each physician's opinion. In particular, it stated that the ALJ "reasonably credited Dr. Parker's diagnosis of legal pneumoconiosis because Dr. Parker linked claimant's impairment to the documented effects of coal mine dust exposure, based on studies that were cited with approval in the preamble to the revised 2001 regulations" and because Dr. Parker's reasoning was "consistent with the regulation recognizing pneumoconiosis 'as a latent and progressive disease.'" Id. at 145. The Board also stated that the ALJ

> rationally discounted Dr. Repsher's opinion because he found that Dr. Repsher did not adequately explain why both coal mine dust exposure and smoking did not contribute to claimant's COPD, considering that the Department of Labor accepted medical literature stating that smoking and coal mine dust exposure are additive in causing COPD.

Id. Blue Mountain petitions for review of that decision.

## II

Blue Mountain argues that the ALJ violated the APA by (1) relying on the preamble, thereby giving the preamble the "force and effect of law;" and (2) refusing to reopen the record to allow Blue Mountain to submit evidence challenging the science of the preamble.[3] Blue Mountain's first argument raises a

---

[3] Blue Mountain's statement of the issues also includes the question of "[w]hether DOL was required to republish the relevant regulations because the agency changed its interpretation of its rules without complying with the [APA]." Pet. Br. at 3. Though the brief touches on the alleged change of interpretation, it does not argue that republication is required. "It is well-settled in this Circuit that an issue listed, but not argued in the opening brief is waived." Gaither v.

(continued...)

question of law, see Peabody Coal Co. v. Dir., Office of Workers' Comp. Programs, 746 F.3d 1119, 1125–26 (9th Cir. 2014), which we review de novo, Antelope Coal Co./Rio Tinto Energy Am. v. Goodin, 743 F.3d 1331, 1341 (10th Cir. 2014). Its second argument challenges the exclusion of evidence, and is therefore reviewed for abuse of discretion. Gunderson I, 601 F.3d at 1021.

*Reliance on the preamble*

In evaluating whether the ALJ was justified in relying on the preamble, we note the very limited extent to which the ALJ referenced the preamable: the ALJ merely included the preamble as one of the tools he employed in evaluating the credibility of two expert reports. The preamble is referenced only twice in the ALJ's ruling. Though this circuit has yet to determine whether an ALJ can use the preamble in this way, many other circuits have considered the matter and concluded that such reliance is lawful. See Peabody Coal Co., 746 F.3d at 1125 (concluding that an ALJ "simply–and not improperly–considered the regulatory preamble to evaluate conflicting expert medical opinions"); Arch on the Green, Inc. v. Groves, 761 F.3d 594, 601 (6th Cir. 2014) (noting that an ALJ may consult

---

³(...continued)
Aetna Life Ins. Co, 394 F.3d 792, 810 (10th Cir. 2004). Similarly, Blue Mountain's brief is replete with "scattered" and "perfunctory" statements that appear to raise additional issues, but Blue Mountain has "failed to frame and develop" them. Cf. Holmes v. Colo. Coal. for Homeless Long Term Disability Plan, 762 F.3d 1195, 1199 (10th Cir. 2014) (internal quotations omitted). Those too are waived. Id.

11

the preamble "to test whether the theories of . . . doctors [are] consistent with medical literature," at least where the ALJ does not "treat[] the preamble as binding"); Harman Mining Co. v. Dir., Office of Workers' Compensation Programs, 678 F.3d 305, 314–15 (4th Cir. 2012) (concluding that an ALJ was "entitled" to cite to the preamble to discredit the opinion of a doctor whose opinion was hostile to the "medical and scientific premises relied on by the Department in coming to the[] conclusions in its regulations"); Helen Mining Co. v. Dir., OWCP, 650 F.3d 248, 256–57 (3d Cir. 2011) (concluding that an ALJ's "reference to the preamble to the regulations . . . unquestionably supports the reasonableness of his decision to assign less weight to [a doctor's] opinion" because the doctor's position was at odds with the Department of Labor's regulations regarding the causes of legal pneumoconiosis); Consolidation Coal Co. v. Dir., Office of Workers' Comp. Programs, 521 F.3d 723, 726 (7th Cir. 2008) (concluding that the ALJ had permissibly discredited a physician's opinion that conflicted with the Department of Labor's finding, as expressed in the preamble, "that there is consensus among scientists and researchers that coal dust-induced COPD is clinically significant" and "that nonsmoking miners develop moderate and severe obstruction at the same rate as smoking miners").

Blue Mountain attempts to distinguish these cases, but does so unpersuasively. First, it contends that this case, unlike those cited above, "deal[s] with a setting in which the preamble undeniably changed the outcome." Pet. Br.

12

at 25.  Blue Mountain relies on the procedural history of this case as support for this proposition, suggesting that the only difference between the ALJ decision in the first two opinions, which denied benefits, and the last one, which granted benefits, is the ALJ's citation to the preamble.  Id. at 12.  We disagree.  Our review of these opinions demonstrates that the third opinion more rigorously analyzed the content of the expert reports than the prior opinions did, which reasonably led to a different outcome.[4]  Moreover, the ALJ provided other reasons, independent of the preamble, for crediting the expert reports as he did.

Blue Mountain also claims that this case is distinguishable because, as employed here, the preamble "undeniably had the force and effect of law."  Id. at 16, 25.  And, if that is the case, and the ALJ used the preamble in that way, Blue

---

[4] Blue Mountain also relies on the procedural history to suggest that the ALJ was forced to use the preamble to decide the case because it would be remanded until he did.  Nothing in the record supports this contention.  Although this court's decision in Gunderson I referenced the "substantial inquiry" performed by the Department of Labor, it also more generally stated that providing a "detailed, scientifically-grounded explanation" "may be accomplished by careful consideration of many factors, including 'the qualifications of the respective physicians, the explanation of their medical opinions, the documentation underlying their medical judgments, and the sophistication and bases of their diagnoses.'"  Gunderson I, 601 F.3d at 1024–25 (citing Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 441 (4th Cir. 1997)).  No mention is made of the preamble in Gunderson I.  When remanding the case a second time, the Board explicitly disclaimed that the ALJ must look to the preamble; rather, the focus of the remand was to obtain explication of the ALJ's brief order which failed to weigh the opinions of all of the medical experts in the case and also "appear[ed] to have mischaracterized" one doctor's opinion.  Pet. App. at 85–87 & n.5.

13

Mountain argues its use was "illegal" because the preamble was never subject to notice and comment, as required by the APA, 5 U.S.C. § 553(b).  Id. at 20.  Blue Mountain argues that the ALJ imbued the preamble with the "force and effect of law," by declaring and/or relying on a "consistency with the Preamble" rule to determine which opinion will be afforded greater weight.  We do not read the ALJ's ruling as invoking the preamble as his only guide.  There is no indication in the ALJ's final opinion that he was effecting some sort of change in the law or relying on a broadly-applicable rule premised on the preamble.   Rather, the ALJ appears merely to have used the preamble's summary of medical and scientific literature as one of his tools in determining whether the experts' medical analyses of Gunderson's condition were credible.  Language used in both sentences that reference the preamble demonstrate that the ALJ was merely analyzing the evidence in this case rather than declaring or applying some broader legal principle:

> Dr. Repsher's opinion fails to address whether coal dust exposure and smoking could have been additive causes of Claimant's lung disease, an etiology clearly adopted in the Preamble to the Regulations. . . . Dr. Parker specifically linked Claimant's symptoms to the documented effects of coal mine exposure and cited to literature that has been approved by the Department in the Preamble.

Pet. App. at 113 (emphasis added).  We fail to see how this use of the preamble transforms a summary of "the prevailing view of the medical community" into binding law.  Blue Mountain always had the ability to counter the medical

14

opinion of Dr. Parker, as well as the medical literature cited in the preamble.  The potential impact of any general principles that may be gleaned from the preamble can always be lessened by evidence that is more case specific or more medically relevant.

Blue Mountain also cites Christensen v. Harris County, 529 U.S. 576 (2000) for the proposition that courts should not defer to an agency's views that were "not subject to notice and comment rulemaking."  Pet. Br. at 24 (citing Christensen, 529 U.S. at 588).  Christensen is distinguishable in at least two ways.  First, Christensen involved an opinion letter that provided a legal interpretation of a statute; this case, in contrast, involves a preamble that provides a scientific justification for amending a regulation.  Compare Christensen, 529 U.S. at 1659 with 65 Fed. Reg. 79920, 79937–45 (Dec. 20, 2000).   Second, the question presented in Christensen was whether the Court should give Chevron deference[5] to the opinion letter; the question we face here is whether the ALJ was entitled to use the preamble as one of his tools in evaluating the scientific credibility of experts.  Cf. Christensen, 529 U.S. at 1662–63.  Because of these distinctions, Christensen is not helpful in resolving the issue before us.

---

[5] In Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 841–44 (1984), the Supreme Court held that courts must defer to an agency's regulation reasonably interpreting an ambiguous statute.

15

In sum, we view the preamble as a scientific primer that helps explain why the agency amended the regulation to add "legal pneumoconiosis" to the definition of "pneumoconiosis." As such, it seems like a reasonable and useful tool for ALJs to use in evaluating the credibility of the science underlying expert reports that address the cause of pneumoconiosis. Accordingly, we join our sister circuits in holding that an ALJ may—but need not—rely on the preamble to 20 C.F.R. § 718.201 for this purpose. This holding does not, as Blue Mountain contends, remove claimants' burden of proving causation. It merely permits ALJs to use the science described in the preamble to weigh the evidence that the parties offer to prove (or disprove) causation. Of course, parties remain free to offer other scientific materials for the ALJ to consider for the same purpose, including but not limited to, materials challenging the continued validity of the science described in the preamble.

*Reopening the record*

Blue Mountain also argues on appeal that the preamble constitutes evidence not in the record and that the APA required the ALJ to reopen the record so that Blue Mountain could respond to the findings of the preamble. Pet. Br. at 29–33 (citing 5 U.S.C. §§ 554(b)(3), 554(c), 556(d)(3)). As aptly stated by the Fourth Circuit in Harman, "the APA does not provide that public law documents, like the Act, the regulations, and the preamble, need be made part of the administrative record." 678 F.3d at 316. Blue Mountain was well aware of the preamble's

16

scientific findings, e.g., Nat'l Mining. Ass'n v. Dep't of Labor, 292 F.3d 849 (D.C. Cir. 2002) (industry challenge to the validity of the relevant regulatory amendments, including the preamble), and had ample opportunity prior to the close of this record to submit evidence or expert opinions to persuade the ALJ that the preamble's findings were no longer valid or were not relevant to the facts of this case. Moreover, its requests to reopen the record—particularly in its motion for reconsideration, when it had the benefit of knowing what in the preamble the ALJ had considered[6]—for the most part did not point to anything in the preamble that it considered no longer scientifically valid.

Blue Mountain also argues that reopening the record is required because the legal standards have changed in that the Department of Labor now contends that miners do not have to prove that their obstructive lung disease was caused by mine work. Yet Blue Mountain does not point to anywhere in the record where the Department contended that Gunderson did not have to prove that his COPD was caused by his mine work.

---

[6] Blue Mountain argues that it did not know what in the preamble was relied on by the ALJ. This argument is unconvincing in part because it is inaccurate. The ALJ cited specifically to the page of the preamble that dealt with cigarette smoking and mine work as additive causes of COPD. Pet. App. at 113. At his most vague, the ALJ states that Dr. Parker "cited to literature that has been approved by the Department in the Preamble," id., but given that Dr. Parker's report is only seven pages long and provides clear citations to the literature in question, it is not difficult to ascertain what the ALJ meant. Admin. Rec., Claimant's Ex. 6 (April 26, 2006).

17

For these reasons, we conclude that the ALJ did not abuse his discretion by refusing Blue Mountain's requests to reopen the record for new evidence.

**III**

While Blue Mountain contends the ALJ violated the APA by relying too heavily on the preamble when determining the weight to be given two medical opinions, we conclude the ALJ did not err. Nor did the ALJ abuse his discretion in denying Blue Mountain's request to reopen the record. Blue Mountain's petition for review is denied.