FILED
United States Court of Appeals
Tenth Circuit

May 23, 2017

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ENERGY WEST MINING
COMPANY,

     Petitioner,

v.                                                                        No. 16-9533

THE ESTATE OF MORRIS E.
BLACKBURN; PHYLLIS E.
BLACKBURN; DIRECTOR, OFFICE
OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,

     Respondents.
_____

**Petition for Review from an Order
of the Benefits Review Board
(BRB No. 2015-0290-BLA)**
_____

William S. Mattingly, Jackson Kelly PLLC, Lexington, Kentucky, for
Petitioner.

Evan B. Smith, Appalachian Citizens' Law Center, Whitesburg, Kentucky,
for the Estate of Morris E. Blackburn, and Phyllis E. Blackburn,
Respondents.
_____

Before **KELLY**, **EBEL**, and **BACHARACH**, Circuit Judges.
_____

**BACHARACH**, Circuit Judge.
_____

Mr. Morris Blackburn worked as a coal miner for roughly twenty years, continually exposing himself to dust in an Energy West coal mine. He also smoked cigarettes and eventually developed a respiratory disease. Based on this disease, Mr. Blackburn claimed benefits under the Black Lung Benefits Act.[1] In response, Energy West contended that Mr. Blackburn had caused his disease by smoking cigarettes. The United States Department of Labor's Benefits Review Board affirmed an award of compensation, and Energy West petitions for review. We deny the petition, concluding that the Board did not err in affirming the award.

## I. After a remand, an administrative law judge held that Energy West had failed to rebut the statutory presumption of an entitlement to benefits.

This case began with Mr. Blackburn's filing of a claim for statutory benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901-945. Statutory benefits are available to disabled coal miners who suffer from various lung disorders as a result of their employment. In this case, the parties agree that Mr. Blackburn was disabled from chronic obstructive pulmonary disease, a type of lung disease, which in his case was

---

[1] Mr. Blackburn died while this appeal was pending. But if his claim is valid, his surviving spouse would be entitled to benefits. *See* 30 U.S.C. § 932(l). After Mr. Blackburn died, we allowed the addition of Mr. Blackburn's widow as a respondent.

characterized by emphysema.[2] The dispute is whether the disease was caused by Mr. Blackburn's work in a coal mine. One physician (Doctor David James) answered "yes"; two other physicians (Doctors Robert Farney and Peter Tuteur) answered "no."

In 2012, Administrative Law Judge Richard Malamphy denied benefits. Judge Malamphy first found that Mr. Blackburn qualified for a statutory presumption of an entitlement to benefits. But Judge Malamphy determined that Energy West had rebutted the presumption by showing that Mr. Blackburn's lung disease had not arisen from his employment in a coal mine.

Mr. Blackburn appealed to the Benefits Review Board, which vacated Judge Malamphy's decision. In the Board's view, Judge Malamphy had simply summarized the evidence without explaining why he believed Doctors Farney and Tuteur rather than Doctor James. The Board remanded for Judge Malamphy to weigh the conflicting medical reports and provide a reasoned decision.

On remand, the case was reassigned to a different administrative law judge (Judge Paul Johnson, Jr.).[3] Judge Johnson disagreed with Judge

---

[2] "COPD is a respiratory impairment characterized by chronic bronchitis or emphysema and airflow obstruction." *Anderson v. Dir., Office of Workers' Comp. Programs*, 455 F.3d 1102, 1104 n.3 (10th Cir. 2006).

[3] Judge Malamphy had retired by the time of the reassignment.

3

Malamphy's original decision, concluding that Energy West had not rebutted the statutory presumption. For this conclusion, Judge Johnson reasoned that Doctors Farney and Tuteur were not credible. On appeal, the Board affirmed.

Energy West petitions for review, arguing that the Board erred when reviewing the decisions of both administrative law judges. For the first decision, Energy West contends that Judge Malamphy provided an adequate explanation. For the second decision, Energy West maintains that Judge Johnson erroneously ruled beyond the scope of the remand, rendered a decision unsupported by substantial evidence, drew his own medical conclusions, treated the regulatory "preamble" as if it had the force of law, failed to review the medical opinions in an even-handed way, and applied the wrong legal standard.

We deny Energy West's petition. We agree with the Board that

- Judge Malamphy did not adequately explain his decision and

- Judge Johnson rendered a decision that was within the scope of the remand, was supported by substantial evidence, and did not improperly draw medical conclusions.

We also conclude that Judge Johnson did not treat the preamble as if it had the force of law and did not improperly review the medical opinions. We need not decide whether Judge Johnson applied the wrong legal standard because any error would have been harmless.

4

**II.   Federal law creates a rebuttable presumption that disabled miners with at least 15 years of employment are entitled to benefits.**

Congress enacted the Black Lung Benefits Act to compensate coal miners who become disabled from certain lung diseases (known collectively as "pneumoconiosis") that arose out of employment in a coal mine. 30 U.S.C. § 901. To be entitled to benefits, a claimant must establish four elements:

1.   *Disease* (the miner suffers from pneumoconiosis),

2.   *Disease causation* (the pneumoconiosis arose out of coal-mine employment),

3.   *Disability* (the miner is totally disabled because of a respiratory or pulmonary impairment), and

4.   *Disability causation* (the pneumoconiosis is a substantially contributing cause of the miner's total disability).

*Antelope Coal Co./Rio Tinto Energy Am. v. Goodin*, 743 F.3d 1331, 1335 (10th Cir. 2014).[4]

There are two definitions of pneumoconiosis—"clinical" and "legal." 20 C.F.R. § 718.201(a). This case involves legal pneumoconiosis, not clinical pneumoconiosis. For legal pneumoconiosis, a miner must suffer from "any chronic lung disease or impairment and its sequelae" that

---

[4]   Our opinions have often combined the third and fourth elements into a single third element. *See, e.g.*, *Blue Mountain Energy v. Dir., Office of Workers' Comp. Programs*, 805 F.3d 1254, 1256 (10th Cir. 2015) (providing a three-element test).

"ar[ose] out of coal mine employment." *Id.* § 718.201(a)(2); *see Anderson v. Dir., Office of Workers' Comp. Programs*, 455 F.3d 1102, 1104 (10th Cir. 2006). Thus, for legal pneumoconiosis, claimants must satisfy both the *Disease* and *Disease causation* elements. *See* 20 C.F.R. § 718.201(a)(2); *Anderson*, 455 F.3d at 1105-07. In other words, the miner must suffer from a chronic lung disease or impairment arising out of coal-mine employment.

Ordinarily, claimants must prove each of the four elements. *Goodin*, 743 F.3d at 1335. But Mr. Blackburn had worked in a coal mine for at least 15 years. Thus, the Act softens his burden: The "15-year presumption" provides that if Mr. Blackburn had established the *Disability* element, he would have been entitled to a rebuttable presumption that the remaining three elements (*Disease*, *Disease causation*, and *Disability causation*) were also established.[5] *See* 30 U.S.C. § 921(c)(4); 20 C.F.R. § 718.305(b)-(c).[6]

---

[5] Mr. Blackburn also cannot "establish entitlement under [20 C.F.R.] § 718.304 by means of chest x-ray evidence." 20 C.F.R. § 718.305(b)(1)(ii) (requirement for the 15-year presumption).

[6] This presumption originally expired in 1982. *See* 30 U.S.C. § 921(c)(4) (2006) ("The provisions of this paragraph shall not apply with respect to claims filed on or after the effective date of the Black Lung Benefits Amendments of 1981."); Black Lung Benefits Amendments of 1981, Pub. L. No. 97-119, tit. II, § 206, 95 Stat. 1635, 1645. In 2010, Congress reinstated the presumption for claims filed after January 1, 2005, that were pending on or after March 23, 2010. Patient Protection and Affordable Care Act, Pub. L. No. 111-148, tit. I, § 1556, 124 Stat. 119, 260 (2010).

6

The burden would then shift to Energy West to disprove one of these three elements. *See* 30 U.S.C. § 921(c)(4); 20 C.F.R. § 718.305(d)(1).



The parties agree that Mr. Blackburn satisfied his threshold burden, triggering the presumption of *Disease*, *Disease causation*, and *Disability causation*. Energy West tried to rebut the presumption by showing that Mr. Blackburn never had legal pneumoconiosis because his lung disease had not arisen out of his employment in a coal mine (*Disease causation*). *See* 20 C.F.R. § 718.305(d)(1)(i)(A) (indicating that the presumption may be rebutted by establishing that the miner never had legal pneumoconiosis). The Benefits Review Board affirmed Judge Johnson's conclusion that Energy West had not rebutted the presumption. On appeal, we consider the correctness of the Board's decision.

## III. Standard of Review

For questions of fact, we formally review the Board's two decisions, but focus on the decisions by the two administrative law judges. *See Antelope Coal Co./Rio Tinto Energy Am. v. Goodin*, 743 F.3d 1331, 1341 n.13 (10th Cir. 2014). For questions of law, we engage in de novo review of the Board's decisions. *Id.* at 1341.

## IV. Judge Malamphy did not adequately explain his decision.

Energy West contends that the Board improperly concluded that Judge Malamphy had not provided an adequate explanation for his denial of benefits. This contention triggers de novo review. *Gunderson v. U.S. Dep't of Labor*, 601 F.3d 1013, 1021 (10th Cir. 2010). In conducting de novo review, we agree with the Board that Judge Malamphy failed to adequately explain the reasons for his conclusion.[7]

An agency's adjudicative decision must be "'accompanied by a clear and satisfactory explication of the basis on which it rests.'" *Id.* at 1022 (quoting *Barren Creek Coal Co. v. Witmer*, 111 F.3d 352, 356 (3d Cir. 1997)). This duty of explanation does not mandate "'verbosity or pedantry,'" but requires only that the administrative law judge provide an

---

[7]    In 2016, when this case reached the Board for a second time, the Board declined to disturb its earlier disposition. *Blackburn v. Energy W. Mining Co.*, BRB No. 15-0290 BLA, slip. op. at 4, 2016 WL 8260661, at *2 (Ben. Rev. Bd. Apr. 26, 2016) (per curiam) (unpublished) ("Second Board Decision").

8

explanation that allows us to discern the decision and the reasons for it. *Id.* (quoting *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999)).

In cases involving conflicting medical or scientific evidence, an administrative law judge must "'articulate a reason and provide support'" to favor one opinion over another. *Id.* (quoting *Stalcup v. Peabody Coal Co.*, 477 F.3d 482, 484 (7th Cir. 2007)). This requires more than a "'cursory statement'" that one expert's opinion is more persuasive than another's. *Id.* at 1023 (quoting *Barren Creek*, 111 F.3d at 354).[8] Instead, an administrative law judge must use his or her expertise to evaluate the expert opinions. *See id.* at 1022-23.

Judge Malamphy's decision failed to provide an adequate explanation. The relevant portion of his written opinion consisted almost entirely of summaries of the medical evidence and block quotations from the physicians' reports. *See* Petitioner's Opening Br., Attachment A at 6-

---

[8]     In Energy West's view, *Gunderson* stands only for the proposition that "[t]he mere fact equally qualified experts gave conflicting testimony does not authorize an [administrative law judge] to avoid the scientific controversy by declaring a tie." Petitioner's Opening Br. at 18 (citing *Gunderson*, 601 F.3d at 1024). Energy West attempts to distinguish *Gunderson* from the present case because Judge Malamphy did not declare a tie. Notwithstanding this difference, *Gunderson* shows that an administrative law judge, in resolving a scientific or medical controversy, must explain why one expert's opinion is more persuasive than another's.

9

15. Following the summaries and block quotations, Judge Malamphy stated

that Energy West had successfully rebutted the 15-year presumption:

> Drs. James, Farney, and Tuteur have given detailed reasoning for their opinions. Each party has relied on published treatises for their positions. [Mr. Blackburn's] history of smoking is clearly more extensive than he acknowledged at the hearing.
>
> I find [Energy West] has rebutted the 15-year presumption by showing that [Mr. Blackburn] does not have pneumoconiosis. All of [Mr. Blackburn's] X-ray readings and his CT-scan readings were negative for pneumoconiosis. Further, the medical opinion evidence does not support a finding of legal pneumoconiosis.
>
> Therefore, I find that evidence does not support a finding that [Mr. Blackburn] has pneumoconiosis.

*Id.* at 15. This explanation references the medical-opinion evidence, Mr.

Blackburn's smoking history, and his negative x-rays and CT-scans.

Energy West makes two arguments for why Judge Malamphy's

explanation was sufficient, pointing to (1) his selection of quotations and

(2) his observation that the x-rays and CT-scans were negative for

pneumoconiosis. These references do not substitute for an articulation of

why Judge Malamphy chose to believe Doctor Farney and Doctor Tuteur

over Doctor James.

For the first argument, Energy West does not suggest that Judge

Malamphy expressly articulated his reasons for crediting the opinions of

Doctors Farney and Tuteur. Instead, Energy West contends that Judge

Malamphy's rationale is discernible "when one reads between the lines of

10

the decision" or analyzes the decision as a whole. *See* Petitioner's Reply Br. at 7.

This argument fails as a matter of law. Like the Board, we are unable to discern Judge Malamphy's reasoning. Perhaps some readers may believe that they can glean Judge Malamphy's reasoning from his selection of quotations. But these readers would ultimately only be guessing at Judge Malamphy's reasoning. This kind of guesswork should be unnecessary because administrative law judges must articulate why they credit one medical expert over another. *Gunderson*, 601 F.3d at 1022. As a result, we decline to look between the lines and into the mind of Judge Malamphy, hoping to find a rationale where none has been articulated.[9]

Second, Energy West points to Judge Malamphy's explanation that "none of the chest x-rays or CT-scans reflect the existence of clinical [pneumoconiosis, also known as] medical pneumoconiosis." Petitioner's Opening Br. at 23. But the x-rays and CT-scans provide little help because Mr. Blackburn relies on *legal* pneumoconiosis rather than on *clinical* pneumoconiosis.

---

[9] The respondents contend that Judge Malamphy's "long-form quotes" constitute only his "summary of the facts, not his analysis of causation." Respondents' Resp. Br. at 28. We need not consider this contention, for we reject Energy West's argument on other grounds.

At oral argument, Energy West shifted its theory, pointing to the negative CT-scans to explain Judge Malamphy's finding that Mr. Blackburn did not have *legal* pneumoconiosis:

> The CT-scan demonstrated Dr. Farney['s] [conclusion], as he explained, there was emphysema, he attributed the emphysema to cigarette smoking. So it supports his conclusion that legal pneumoconiosis was not present.

Oral Argument at 11:34-45. This argument is waived and unpersuasive. The argument is waived because it was raised for the first time at oral argument. *See United States v. Burns*, 775 F.3d 1221, 1223 n.2 (10th Cir. 2014). The argument is also unpersuasive. As quoted above, Energy West points out that the CT-scans showed emphysema and Dr. Farney attributed the emphysema to smoking rather than exposure to coal-mine dust. But everyone agrees that Mr. Blackburn had emphysema; Judge Malamphy did not say that the CT-scans had supported Dr. Farney's conclusion about the *cause* of the emphysema. As a result, we can only speculate about why Judge Malamphy might have regarded the CT-scans as relevant to his conclusion on legal pneumoconiosis.

* * *

Judge Malamphy did not articulate why he believed that Energy West had rebutted the presumption of legal pneumoconiosis. Thus, the Board correctly vacated Judge Malamphy's decision.

12

**V. The Board properly affirmed Judge Johnson's decision.**

On remand, Judge Johnson decided to award benefits to Mr. Blackburn. Petitioner's Opening Br., Attachment C at 18. In reaching this decision, Judge Johnson considered all of the medical opinions, including those of Doctors Farney and Tuteur, who had attributed Mr. Blackburn's lung disease to smoking. Judge Johnson decided that the opinions of Doctor Farney and Doctor Tuteur were not credible. As a result, Judge Johnson concluded that Energy West had failed to rebut the presumption of an entitlement to benefits. The Board upheld that decision.

On appeal, Energy West presents six challenges to Judge Johnson's decision, arguing that Judge Johnson

1. ruled beyond the scope of the remand,

2. rendered a decision unsupported by substantial evidence,

3. improperly drew his own medical conclusions,

4. improperly relied on the "preamble" to the applicable regulations,

5. failed to compare the medical opinions in an even-handed way, and

6. applied the wrong legal standard.

**A. Judge Johnson did not rule beyond the scope of the remand.**

Energy West contends that Judge Johnson's ruling went beyond the scope of the remand. We disagree.

13

After Judge Malamphy initially denied benefits, the Board vacated the decision and remanded for the administrative law judge to provide an adequate explanation. According to Energy West, the remand instructions required Judge Johnson to provide an adequate explanation *in Energy West's favor*.[10] For this proposition, Energy West relies on the following statement from the Board's first decision:

---

[10] Energy West appears to reframe its argument between the filing of its opening and reply briefs.

In its opening brief, Energy West contended:

> The suggestion the case was remanded for an Administrative Law Judge to determine the weight to accord of these [medical] opinions and because the [administrative law judge] had discretion on remand to reconsider credibility findings, the prior determinations were not binding on rebuttal, is untenable. This is not what the 2013 Board found. The arguments claimants made to [Judge] Johnson had been made to the 2013 Board and it ruled there was no merit in the contention that the opinions of Drs. Farney and Tuteur were insufficient to support a finding of rebuttal of the presumption of total disability due to pneumoconiosis. Yet, those same arguments are now credited when [Judge] Johnson finds merit in the arguments that the opinions of Drs. Farney and Tuteur are insufficient to support a finding of rebuttal. The law-of-the case doctrine would not allow for such a bipolar interpretation of the same facts. The Board's 2013 finding should have been applied.

Petitioner's Opening Br. at 26-27 (citations omitted).

Though this segment appears to challenge the administrative law judge's discretion to arrive at a different result on remand, Energy West states in its reply brief that it "does not suggest" that the Board, when reviewing Judge Malamphy's decision, had made "an unrestricted holding

14

We find no merit . . . to [Mr. Blackburn's] contention that the opinions of Drs. Farney and Tuteur are insufficient to support a finding of rebuttal, as both doctors opined that [Mr. Blackburn's] respiratory impairment was not due, in whole or in part, to his coal mine employment.

*Blackburn v. Energy W. Mining Co.*, BRB 12-0607 BLA, slip. op. at 5, 2013 WL 4407026, at \*2 (Ben. Rev. Bd. July 24, 2013) (per curiam) (unpublished) ("First Board Decision"); *see also* Oral Arg. at 8:05-8:15 (counsel for Energy West stating that "[t]he instruction to the [administrative law judge] was, '[y]ou can't discredit them because they did not say anything inappropriate'").

We disagree with Energy West's interpretation of the Board's instructions. The Board was simply saying that the opinions by Doctor Farney and Doctor Tuteur were not *necessarily* insufficient to rebut the presumption—rather, that determination could be made only after the administrative law judge determined which medical opinions were persuasive:

On remand, the administrative law judge must discuss and weigh all of the relevant evidence, resolve any scientific dispute on scientific grounds, and set forth the specific bases for his findings. The administrative law judge is reminded that

that the Board had reviewed, assessed, and found [Doctor Farney's and Doctor Tuteur's] opinions sufficient to prove rebuttal." Petitioner's Reply Br. at 16-17. Instead, Energy West insists that it is arguing only that the first Board decision had rejected the idea that the medical opinions by Doctors Farney and Tuteur were "invalid or contrary to the [regulatory] Preamble and legally unable to establish rebuttal of the 15-year presumption." *Id.* at 17.

15

it is [Energy West]'s burden on rebuttal to [rebut the presumption].

First Board Decision at 5, 2013 WL 4407026, at \*3; *see* Second Board Decision at 5-6, 2016 WL 8260661, at \*3. In other words, the Board was just saying that the administrative law judge should determine whether the employer had presented sufficient evidence to rebut the presumption, not that the administrative law judge should decide in favor of the employer. Otherwise the remand would have been pointless.[11]

Accordingly, we conclude that Judge Johnson did not deviate from the remand instructions.[12]

### B. Judge Johnson's decision was supported by substantial evidence.

Energy West also contends that Judge Johnson's decision was not supported by substantial evidence. We disagree, concluding that the record contains evidence that "'a reasonable mind might accept as adequate to support'" the administrative law judge's conclusion. *Energy W. Mining Co.*

---

[11] The respondents also argue that (1) Judge Johnson "was not bound by prior determinations of credibility" and (2) Judge Malamphy's presence at the hearing did not provide an advantage over Judge Johnson when evaluating the experts' credibility. Respondents' Resp. Br. at 31 n.15. We need not address these arguments.

[12] In arguing that Judge Johnson ruled beyond the scope of the remand, Energy West assumes that the law-of-the-case doctrine applies to Board decisions. For the sake of argument, we may assume that Energy West is correct because this assumption would not affect the outcome.

16

*v. Oliver*, 555 F.3d 1211, 1217 (10th Cir. 2009) (quoting *Hansen v. Dir., Office of Workers Comp. Programs*, 984 F.2d 364, 368 (10th Cir. 1993)).

Judge Johnson provided four reasons to question Dr. Farney's credibility[13] and one reason to question Dr. Tuteur's credibility.[14]

---

[13]  Judge Johnson stated:

[First,] th[e] study [relied upon by Dr. Farney], to the extent that it concluded there is a distinction between the contribution of cigarette smoking and that of coal-dust exposure to centrilobular emphysema is not actually addressed in the article, at least according to his summary. The article instead focused on the existence of clinical pneumoconiosis. [¶]

Second, Dr. Farney's reference to "the established pathogenesis and natural history of pulmonary diseases secondary to coal dust exposure" implies that centrilobular emphysema caused by coal-dust exposure is due to a different process from that caused by cigarette smoking. That position is contrary to the premise underlying the Black Lung regulations that coal dust exposure and cigarette smoking cause damage to the lungs by similar mechanisms. [¶]

Third, Dr. Farney's report is internally inconsistent in that he exhaustively discussed Mr. Blackburn's smoking history, but then relied in part on the Rom study's conclusion regarding non-smoking Utah coal miners. [¶]

Fourth, Dr. Farney's opinion fails to recognize that the Department of Labor has determined that coal dust and smoking have additive effects, and he did not discuss that possibility.

Petitioner's Opening Br., Attachment C at 15-16.

[14]  Judge Johnson stated:

[Dr. Tuteur's] attempts to show that Mr. Blackburn developed his disease from smoking, and not from coal-dust exposure,

17

Energy West contends that Judge Johnson's third and fourth reasons for rejecting Dr. Farney's opinion—an internal inconsistency and a failure to consider the possibility of additive effects from coal-mine dust and smoking—are unsupported by substantial evidence.

First, Energy West challenges Judge Johnson's conclusion that Doctor Farney's report was "internally inconsistent." Petitioner's Opening Br., Attachment C at 16. This challenge involves Judge Johnson's reference to Doctor Farney's discussion of a medical article. According to Doctor Farney's discussion, the article indicated that "non-cigarette smoking" coal miners have a low risk of developing pneumoconiosis. *See id.*; Respondents' Supp. App'x at 112. Because Mr. Blackburn was a smoker, Judge Johnson found it inconsistent for Doctor Farney to rely on the article as a basis to conclude that Mr. Blackburn had a low risk of developing legal pneumoconiosis. Petitioner's Opening Br., Attachment C at 16; Respondents' Supp. App'x at 112.

Energy West denies an inconsistency. Energy West appears to assume that Mr. Blackburn's smoking would not increase his risk of legal pneumoconiosis. Petitioner's Opening Br. at 35-36. Based on this apparent assumption, Energy West suggests that Judge Johnson misunderstood how

suffer from over-reliance on statistics and a lack of individualized application of those data to Mr. Blackburn. Petitioner's Opening Br., Attachment C at 16.

18

Mr. Blackburn's situation had related to Dr. Farney's conclusion from the article. *See id.*

The record supports Judge Johnson's finding of an inconsistency. Judge Johnson noted that according to the Department of Labor, medical evidence shows that smoking can increase the risk of a miner developing pneumoconiosis from coal-mine dust. Petitioner's Opening Br., Attachment C at 14-15. Based on the Department of Labor's position, Judge Johnson could reasonably find it inconsistent for Doctor Farney to conclude that Mr. Blackburn had a low risk for legal pneumoconiosis just because the risk was low for miners who had not smoked.

Second, Energy West challenges Judge Johnson's conclusion that Doctor Farney did not consider the possibility that "coal dust and smoking have additive effects." Petitioner's Opening Br., Attachment C at 16. This challenge is two-fold: (1) that Judge Johnson erred in interpreting Doctor Farney's opinion and (2) that Judge Johnson misunderstood the preamble, which states only that coal-mine dust and smoking can have additive effects, not that they will always have additive effects. We reject both challenges.

Energy West first asserts that Doctor Farney considered the possibility of additive effects. *See* Petitioner's Opening Br. at 45-46 ("Dr. Farney specifically recognizes the potential additive contribution of coal dust, but negates any such contribution in Mr. Blackburn's case based on a

reasoned medical opinion."). For this assertion, Energy West provides no record citation.

We conclude that substantial evidence supports Judge Johnson's finding. Doctor Farney stated that coal-mine dust can cause legal pneumoconiosis "independent" of smoking, and he regarded this risk as low. Respondents' Supp. App'x at 111-12. Doctor Farney then concluded that Mr. Blackburn's risk of legal pneumoconiosis was the same as the risk for a non-smoker. *See id.* at 112. Judge Johnson could reasonably conclude that Doctor Farney had failed to consider the additive effects of coal-mine dust and smoking.

Energy West also asserts that the preamble states only that coal-mine dust and smoking "*can*" have additive effects, not that they always "*have*" additive effects. Petitioner's Opening Br. at 45 (emphasis in original). Again, Energy West provides no citation for this proposition.

We conclude that Judge Johnson did not misunderstand the preamble. The preamble favorably cites studies saying that coal-mine dust and smoking have additive effects:

> [Lung function] decline occurs at a similar rate in smokers and nonsmokers, although the loss of lung function overall is greater in smokers, the two effects *being* additive. . . .
>
> . . . .
>
>     . . . Smokers who mine *have* additive risk for developing significant obstruction. . . . [¶]

20

The message from the Marine study is unequivocal: Even in the absence of smoking, coal mine dust exposure is clearly associated with clinically significant airways obstruction and chronic bronchitis. The risk *is* additive with cigarette smoking.

. . . .

. . . "[T]he combined effects of coal mine dust and smoking on [lung function] appear *to be* additive." . . .

. . . ["I]t appears that the major damages caused by cigarette smoking *is* additive to the minor damage which can be attributed to coal dust."

Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, as amended, 65 Fed. Reg. 79,920, 79,939-41 (Dec. 20, 2000) (emphasis added) (citations omitted).

This additive effect results in increased susceptibility to lung disease for the group of coal miners who both smoked cigarettes and exposed themselves to coal-mine dust.



Addressing this group, Judge Johnson stated: "[T]he Department of Labor has determined that coal dust and smoking have additive effects . . . ." Petitioner's Opening Br., Attachment C at 16. In our view, this statement does not mischaracterize the preamble.

We therefore reject Energy West's factual challenges to Judge Johnson's criticisms regarding an inconsistency in Doctor Farney's report and his failure to consider the additive risk created by exposure to coal-mine dust and smoking.

**C.  Judge Johnson did not interject his own medical opinions.**

Energy West also challenges Judge Johnson's first criticism of Doctor Farney's opinion and the single criticism of Doctor Tuteur's opinion. According to Energy West, these criticisms show that Judge Johnson interjected his own medical opinions. We disagree, concluding that Judge Johnson properly weighed the medical opinions.

First, Energy West challenges Judge Johnson's criticism of Doctor Farney's reliance on a particular medical article. Dr. Farney had diagnosed Mr. Blackburn's lung disease as characterized by emphysema. Petitioner's Opening Br., Attachment C at 4 n.5. In light of this diagnosis, Judge Johnson criticized Doctor Farney's reliance on a medical article, stating that "at least according to [Doctor Farney's] summary," the article had not actually addressed the distinction between the contributions of smoking

22

and coal-dust exposure on emphysema.[15] *Id*. at 15-16; *see id.* at 4 n.5. This criticism leads Energy West to argue that Judge Johnson improperly acted as a "medical expert." Petitioner's Opening Br. at 29. We disagree with this characterization.

Judge Johnson simply weighed the different medical opinions, as he was required to do. Administrative law judges sometimes improperly exceed their role by making their own medical diagnoses or using non-scientific evidence to resolve a conflict between medical experts. Here, though, Judge Johnson simply resolved a medical conflict on scientific grounds. *See Gunderson v. U.S. Dep't of Labor*, 601 F.3d 1013, 1023 (10th Cir. 2010) (stating that an administrative law judge must rely on "scientific grounds" "to resolve a scientific dispute"); *id.* at 1022-23 (indicating that an administrative law judge can make "scientific and technical judgments within the scope of agency expertise" (quoting *Wyoming v. United States*, 279 F.3d 1214, 1240 (10th Cir. 2002))); *see also Dixie Fuel Co. v. Dir.,*

---

[15]    It is unclear whether Judge Johnson read this article or relied solely on Doctor Farney's summary of the article. But Energy West has not argued that Judge Johnson failed to read the article or that he mischaracterized the article. We therefore do not consider these potential arguments.

*Office of Workers' Comp. Programs*, 820 F.3d 833, 845-46 (6th Cir. 2016).[16]

Second, Energy West challenges Judge Johnson's criticism of Doctor Tuteur's reliance on statistics. Doctor Tuteur concluded that Mr. Blackburn probably did not have legal pneumoconiosis because only a small percentage of coal miners suffer from legal pneumoconiosis. Petitioner's Opening Br., Attachment C at 16. Judge Johnson thought that this conclusion relied too heavily on statistics rather than "individualized application." *Id.*

Energy West characterizes this criticism as Judge Johnson's interjection of his own medical opinion. We reject this characterization. Judge Johnson simply analyzed Doctor Tuteur's opinion based on a scientific ground: the overreliance on statistics and lack of individualized application. An administrative law judge can undertake this sort of analysis. *See, e.g.*, *Antelope Coal Co./Rio Tinto Energy Am. v. Goodin*, 743

---

[16] In *Dixie Fuel Co.*, an administrative law judge concluded that a medical report was not credible because the physician had relied partly on medical articles that did not support the physician's conclusions. 820 F.3d at 845-46. The employer argued that the administrative law judge had improperly "play[ed] expert" by examining the medical articles. *Id.* at 845. The Sixth Circuit disagreed, explaining that the administrative law judge had "merely fulfilled his role as fact-finder by evaluating the credibility of [the physician's] conclusions." *Id.*

24

F.3d 1331, 1345-46 (10th Cir. 2014);[17] *see also Consol. Coal Co. v. Dir., Office of Workers Comp. Programs*, 732 F.3d 723, 735 (7th Cir. 2013) (holding that the administrative law judge did not err by discrediting the medical opinion of a doctor who had relied on general statistics because the doctor had not related these statistics to the particular coal-mining employee). We therefore reject Energy West's argument.

D. **Judge Johnson did not improperly rely on the "preamble" to the applicable regulations.**

Energy West also argues that Judge Johnson improperly relied on the "preamble" to the applicable regulations.[18] According to Energy West, Judge Johnson treated the preamble as the law even though the preamble had not been subject to the Administrative Procedure Act's notice-and-comment requirements.

---

[17]     In *Goodin*, the employer also presented testimony by medical experts, who had opined that a coal miner's chronic obstructive pulmonary disease was statistically more likely to be caused by cigarettes or asthma than by inhalation of coal-mine dust. 743 F.3d at 1339, 1345. The administrative law judge rejected this reliance on statistical probabilities because the medical experts had failed to account for the possibility that this coal miner fell within the statistical minority of individuals contracting chronic obstructive pulmonary disease from coal mining. *Id.* at 1345-46. We upheld this rationale as adequately supported by the record. *Id.* at 1346.

[18]     The preamble to the 2001 amendments to the black lung regulations provides the medical principles that underlie the Department of Labor's current regulations. *See* Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, as amended, 65 Fed. Reg. 79,920, 79,920-80,045 (Dec. 20, 2000).

We disagree based on our treatment of the issue in *Blue Mountain Energy v. Director, Office of Workers' Compensation Programs*, 805 F.3d 1254 (10th Cir. 2015). There we distinguished between two distinct uses of the preamble. In one, an administrative law judge uses the preamble to "effect[] some sort of change in the law" or to create "a broadly-applicable rule." 805 F.3d at 1261. This use of the preamble is improper. *Id.* But an administrative law judge can consider the preamble as a tool to gauge an expert's credibility. *See id.* Because the administrative law judge in *Blue Mountain* had used the preamble only as a tool to weigh the causation evidence for that case (rather than for a broader legal principle), we did not fault the Board for affirming the administrative law judge's decision. *Id.* at 1261-62.

This dichotomy guides our consideration of Judge Johnson's use of the preamble. Energy West points to two of Judge Johnson's statements: (1) that Doctor Farney's understanding of how coal-mine dust and cigarette smoke affects the lungs was "contrary to the premise underlying the Black Lung regulations," and (2) that Doctor Farney had failed to acknowledge the Department of Labor's recognition of the additive effects of coal-mine dust and smoking. Petitioner's Opening Br., Attachment C at 16.

We believe that Judge Johnson's use of the preamble was proper. As in *Blue Mountain*, the administrative law judge's language refers to analysis of the evidence "in this case." *Blue Mountain*, 805 F.3d at 1261

26

(emphasis omitted). After discussing the premises underlying the preamble, Judge Johnson indicated that

- he understood that all issues "must be resolved on a claim-by-claim basis" and

- he would "weigh the conflicting medical opinions in this case based on these principles."

Petitioner's Opening Br., Attachment C at 15.

The disputed statements of Judge Johnson were nearly identical to the administrative law judge's language in *Blue Mountain*. There the administrative law judge had said:

> Dr. Repsher's opinion fails to address whether coal dust exposure and smoking could have been additive causes of Claimant's lung disease, an etiology *clearly adopted in the Preamble* to the Regulations. . . . Dr. Parker specifically linked Claimant's symptoms to the documented effects of coal mine exposure and cited to literature *that has been approved by the Department in the Preamble*.

*Blue Mountain*, 805 F.3d at 1261 (emphasis modified) (ellipsis in original) (citation omitted). Here too Judge Johnson indicated that he understood the need to resolve each case on an individual basis. Thus, if use of the preamble was permissible in *Blue Mountain*, the same must be true here.

Energy West argues that this case differs from *Blue Mountain* because the administrative law judge there made "limited references to the preamble and looked to other portions of the medical opinions." Petitioner's Opening Br. at 34. According to Energy West, Judge Johnson's use of the preamble was more expansive, using the preamble to conclude

27

that "medical opinions which are based on the premise that coal dust-related obstructive disease is completely distinct from smoking-related disease are errant" and that "coal dust and smoking . . . always have additive effects." Petitioner's Opening Br. at 33, 45 (emphasis omitted). We disagree. Judge Johnson simply pointed out that Doctor Farney was making unsupported assumptions that conflicted with the preamble. Had Doctor Farney provided reasons for his assumptions, Judge Johnson would have been bound to consider them. *See Blue Mountain*, 805 F.3d at 1261 ("[A party] always ha[s] the ability to counter . . . the medical literature cited in the preamble.").

We therefore conclude that Judge Johnson did not improperly treat the preamble as the law.[19]

### E.   The administrative law judge did not err when considering Dr. James's opinion.

Energy West contends that Judge Johnson was overly generous in his consideration of Dr. James's opinion. This contention reflects a misunderstanding of how Judge Johnson applied Dr. James's opinion. Judge Johnson did describe Dr. James's opinion as "well-documented and

---

[19]   At oral argument, Energy West also argued that when Judge Johnson had relied on the preamble, he "appl[ied] arguments never made by the claimant." Oral Argument at 8:20-35. If Energy West is arguing that Judge Johnson erred in discussing the preamble without a request by the claimant, this argument is waived by omission in Energy West's briefs. *See United States v. Burns*, 775 F.3d 1221, 1223 n.2 (10th Cir. 2014).

well-reasoned." Petitioner's Opening Br., Attachment C at 16. But Judge Johnson simply concluded that Dr. James's opinion had not helped Energy West to rebut the presumption. *Id.* This conclusion appears unassailable. Energy West might disagree with Dr. James, but his opinion certainly did not help Energy West to rebut the presumption.

**F.     If Judge Johnson had erroneously used the wrong legal standard, the error would have been harmless.**

Finally, Energy West argues that Judge Johnson applied an improper legal standard that unfairly intensified Energy West's burden. We need not decide whether Judge Johnson erred because any such error would have been harmless. *See Antelope Coal Co./Rio Tinto Energy Am. v. Goodin*, 743 F.3d 1331, 1348 (10th Cir. 2014) (concluding that "any alleged error was harmless because Mr. Goodin would have prevailed even without the [error]").

Energy West's argument is straightforward. A federal regulation allows Energy West to rebut the 15-year presumption by establishing that Mr. Blackburn did not have legal pneumoconiosis or clinical pneumoconiosis. 20 C.F.R. § 718.305(d)(1)(i). Only legal pneumoconiosis is at issue here, for no one contends that Mr. Blackburn had clinical pneumoconiosis. A different federal regulation defines legal pneumoconiosis as a chronic lung disease or impairment "arising out of coal mine employment." *Id.* § 718.201(a)(2). The phrase "arising out of

29

coal mine employment" "includes" any chronic disease or impairment "*significantly related to, or substantially aggravated by*" dust from coal-mine employment. *Id.* § 718.201(b) (emphasis added). According to Energy West, § 718.201(b) sets forth the relevant standard and Judge Johnson deviated from this standard by requiring Energy West to completely "rule out" any causal link between Mr. Blackburn's exposure to coal-mine dust and his lung disease.

For the sake of argument, we can assume that Energy West is correct regarding the standard and Judge Johnson's failure to apply that standard. Even with these assumptions, the alleged error would have been harmless because Judge Johnson did not base his decision on Energy West's failure to rule out every connection between coal-mine dust and Mr. Blackburn's lung disease. Instead, Judge Johnson reasoned that Energy West's evidence was not credible.

Energy West asserts that "[e]valuation under the correct legal standard may have changed the credibility determinations." Petitioner's Opening Br. at 28. We disagree. Judge Johnson rejected Doctor Farney's opinion because it had been unsupported by the referenced medical literature, had contained an inconsistency, and had failed to address important issues. And Judge Johnson rejected Doctor Tuteur's opinion because it had relied on statistics rather than on Mr. Blackburn as an

30

individual. The rebuttal standard did not affect Judge Johnson's analysis of either doctor's opinion.

Energy West argues that a Board case, *Minich v. Keystone Coal Mining Corp.*, demonstrates that any error here was not harmless. Petitioner's Opening Br. at 28-29 (citing *Minich v. Keystone Coal Mining Corp.*, 25 Black Lung Rep. (Juris) 1-149 (Ben. Rev. Bd. 2015)). But *Minich* did not need to address harmlessness because the administrative law judge's conclusion there had resulted directly from the administrative law judge's use of the wrong legal standard. There one doctor had found that the effect of coal-mine dust was "insignificant," and another doctor had found that the effect was "not clinically significant." *Minich*, 25 Black Lung Rep. at 1-158. The administrative law judge decided in favor of the claimant because the physicians could not exclude the possibility that exposure to coal-mine dust had contributed to the claimant's disability. *Id.* at 1-157 to -158. The Board agreed with the employer's criticism of the rule-out standard and vacated the administrative law judge's decision awarding benefits to the coal miner. *Id.* at 1-158.

In *Minich*, the Board never mentioned harmlessness or an issue involving the credibility or persuasiveness of the doctors' opinions. *See id.* Presumably, these considerations appeared unimportant because the administrative law judge had taken the doctors' opinions at face value. Doing so, the administrative law judge had reasoned that the doctors'

31

opinions would require an award of benefits under the rule-out standard. *See id.*

That is not the case here, for Judge Johnson did not take the medical opinions at face value. Instead, Judge Johnson decided that the opinions of Doctor Farney and Doctor Tuteur were not credible. In reaching this decision, Judge Johnson had no reason to rely on the rule-out standard and he didn't. As a result, *Minich* bears little relevance and the alleged error here was harmless.

## VI. Disposition

We deny the petition for review.