FILED
**United States Court of Appeals
Tenth Circuit**

**August 13, 2024**

**Christopher M. Wolpert
Clerk of Court**

PUBLISH

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

SUNNYSIDE COAL COMPANY;
OLD REPUBLIC INSURANCE
COMPANY,

    Petitioners,

v.

DIRECTOR, OFFICE OF
WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR;
RONALD A. FOSSAT,

    Respondents.

No. 23-9517

_____

## ON PETITION FOR REVIEW OF A DECISION AND ORDER
## OF THE BENEFITS REVIEW BOARD
## UNITED STATES DEPARTMENT OF LABOR
## (No. BRB 21-0386 BLA)

_____

Michael A. Pusateri (Mark E. Solomons with him on briefs), Greenberg Traurig LLP, Washington, D.C., for Petitioners.

Amanda Torres, Sarah M. Hurley, Attorneys (Seema Nanda, Solicitor of Labor; Barry H. Joyner, Associate Solicitor; Jennifer L. Jones, Deputy Associate Solicitor; and Michael P. Doyle, Counsel for Appellate Litigation with them on the brief), Department of Labor, Washington, D.C., for the Federal Respondent.

Brad A. Austin, Wolfe Williams & Reynolds, Norton, VA, for Respondent Ronald A. Fossat.

_____

Before **HARTZ**, **McHUGH**, and **FEDERICO**, Circuit Judges.
_____

**FEDERICO**, Circuit Judge.
_____

In 2013, Ronald Fossat, a coal miner, filed a claim for benefits under the Black Lung Benefits Act (BLBA), 30 U.S.C. § 901 *et seq*. After years of his claim trudging through the administrative review process, on January 21, 2021, he was awarded benefits by an Administrative Law Judge (ALJ). His former employer — Sunnyside Coal Company (Sunnyside) — appealed that award to the U.S. Department of Labor Benefits Review Board (Board), which affirmed the ALJ's decision and order.[1]

Sunnyside now petitions this Court for review. The Director of the Office of Workers' Compensation Programs at the United States Department of Labor (OWCP) joins Fossat as a Respondent.

Sunnyside makes three arguments to support its request that we remand this case with instructions to deny benefits to Fossat. First, it argues that the agency's interpretation of the relevant section of the BLBA — 30 U.S.C. § 921(c) — was erroneous because it "clashes with the BLBA's

_____

[1] Fossat died on February 15, 2021, less than one month after the ALJ awarded him benefits. His widow pursues the claim for benefits on behalf of his estate.

2

text, structure, and history, offending background principles of construction and common sense." Aplt. Br. at 25. Second, it argues the Department of Labor's "pilot program," which allows for a supplemental medical report following the statutorily mandated pulmonary examination of a miner / claimant at government expense, "offends the law's plain text," is "employed one-sidedly to aid claimants' quests for benefits," and does "violence to employers' rights." *Id.* at 26. Finally, Sunnyside argues that the ALJ's medical merits analysis was flawed.

Exercising jurisdiction under 33 U.S.C. § 921(c), we reject these arguments and deny the petition.[2]

## I

To receive benefits under the BLBA, "a claimant must establish four elements:

1. *Disease* (the miner suffers from [clinical or legal[3]] pneumoconiosis),

---

[2] Judge Hartz joins this Opinion except for Part III.B.3.

[3] Pneumoconiosis is a medical condition commonly referred to as black lung disease. Legal pneumoconiosis is "a broader class of lung diseases that are not pneumoconiosis as the term is used by the medical community." *Antelope Coal Co./Rio Tinto Energy Am. v. Goodin*, 743 F.3d 1331, 1335 (10th Cir. 2014) (quoting *Anderson v. OWCP*, 455 F.3d 1102, 1104 (10th Cir. 2006)). It is defined as "any chronic lung disease or impairment and its sequelae arising out of coal mine employment. This definition includes, but is not limited to, any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment." *Id.* (quoting 20 C.F.R. § 718.201(a)(2)).

2. *Disease causation* (the pneumoconiosis arose out of coal-mine employment),

3. *Disability* (the miner is totally disabled because of a respiratory or pulmonary impairment), and

4. *Disability causation* (the pneumoconiosis is a substantially contributing cause of the miner's total disability)."

*Energy W. Mining Co. v. Est. of Blackburn*, 857 F.3d 817, 821 (10th Cir. 2017).

"Ordinarily, claimants [such as Fossat] must prove each of the four elements[;]" however, the BLBA "softens his burden" with the inclusion of a rebuttable presumption. *Id.* at 821–22. If a miner, *inter alia*, "was employed for fifteen years or more in one or more underground coal mines, and . . . if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis." 30 U.S.C. § 921(c)(4). In other words, if a miner establishes the disability element, the miner is "entitled to a rebuttable presumption that the remaining three elements (*Disease, Disease causation, and Disability causation*) [are] also established." *Energy W. Mining Co.*, 857 F.3d at 822. Furthermore, the Secretary of Labor "shall not apply . . . the requirement of this paragraph that the miner work in an underground mine where [the Secretary] determines that conditions of a miner's employment in a coal

4

mine other than an underground mine were substantially similar to conditions in an underground mine." 30 U.S.C. § 921(c)(4).

If an employer opposes the claim entitlement, it "may rebut the presumption by" either "(i) [e]stablishing both that the miner does not, or did not, have: (A) [l]egal pneumoconiosis . . . and (B) [c]linical pneumoconiosis . . . arising out of coal mine employment" or "(ii) [e]stablishing that no part of the miner's respiratory or pulmonary total disability was caused by pneumoconiosis . . . ." 20 C.F.R. § 718.305(d)(i)–(ii). Graphically, this Court has explained the BLBA's presumption, elements, and proof burdens this way:



## Elements of the 15-Year Presumption

Claimant´s Burden (to trigger the presumption) ⟶ Prove
• Disability

Employer´s Burden (to rebut the presumption) ⟶ Disprove
• Disease,
• Disease causation, or
• Disability causation

*Energy W. Mining Co.*, 857 F.3d at 822. With this legal framework in mind, we next turn to Fossat's history of working in coal mines and his health conditions.

## II

### A

Fossat was sixty-seven years old when he filed his claim for BLBA benefits in 2013. He had worked as a coal miner for twenty-four years, from 1970 to 1994, ten years below ground and fourteen years above ground. Over the course of his career, he held various roles, including as a timber man, miner helper, miner operator, shop mechanic, longwall mechanic, and finally, as a tipple mechanic. Throughout this time, he worked at the same underground coal mine in Utah, although four different companies owned the mine over this period. He left his last job as a tipple operator when the mine, which was then operated by Sunnyside, shut down in 1994. All of Fossat's positions as a coal miner were dusty. When he filed the claim, Fossat provided in his application that he had a terrible cough for many years and was on oxygen during the day and night to improve his breathing.

Fossat smoked cigarettes "off and on since 1966, from a half pack a day up to a pack and a half a day . . . ." Aplt. App'x I at 206. When he was deposed for this claim in February 2014, he testified that he last smoked six months prior, and it had been four or five years since he smoked regularly. He quit smoking after he was hospitalized with a heart problem.

After he left his job at the coal mine in 1994, Fossat held several part-time jobs. He stopped working completely in 2004 when he started to receive

Social Security Disability because of back, knee, and shoulder problems. After he left the coal mines, Fossat did not think he could continue to do his job because his breathing problems prohibited it. According to Fossat, even when he stopped smoking, his breathing problems persisted and stayed the same.

After filing for BLBA benefits in 2013, Fossat underwent OWCP-sponsored medical testing, as well as testing requested by Sunnyside. At issue on appeal are Sunnyside's requested evaluations from Dr. Robert Farney (Dr. Farney) and Dr. David Rosenberg (Dr. Rosenberg) and the OWCP-sponsored evaluation from Dr. Shane D. Gagon (Dr. Gagon). A summary of the medical evidence is as follows.

*1.     Dr. Gagon.* Dr. Gagon examined Fossat on September 7, 2013, at the OWCP's request. He was aware of Fossat's employment history and the physical demands of his last coal mine job and concluded Fossat could not perform this job. Dr. Gagon conceded that the percentage of Fossat's symptoms caused by coal dust versus smoking or obesity was a guess.

In addition to Dr. Gagon's opinions, the OWCP's medical evidence included arterial blood gas studies to measure Fossat's "lungs' ability to oxygenate blood," a pulmonary function study to "measure impairment of lung function and any obstruction in the lungs' airways," and chest x-rays to detect pneumoconiosis. Aplt. App'x I at 206–08. Fossat's carbon dioxide

levels measured by the arterial blood gas studies qualified him for black lung benefits, regardless of the elevation at which he was tested.[4] *See* App'x C to 20 C.F.R. § 718. Fossat's pulmonary function study also qualified him for benefits, although the ALJ would later determine the study was not valid, ostensibly because "flow versus loop volumes showed a little bit of erratic effort" from Fossat. Aplt. App'x I at 207, 229.

As for the x-rays, some of the readings qualified while others did not. The ALJ provided two charts summarizing the x-ray readings, as well as a footnote explaining the varying qualifications to read x-rays, namely, board-certification in radiology or examination with the National Institute for Occupational Safety and Health.

*2.     Dr. Farney.* One of Sunnyside's doctors, Dr. Farney, examined Fossat on March 13, 2014. "Dr. Farney thought that [Fossat] would be in the same position if he had not worked in the mines," *id.* at 215, and that his "disabling respiratory impairment and other conditions did not arise in whole or in part from his coal mine employment or coal dust exposure," *id.* at 213. Dr. Farney also stated that "if you're going to get a disease is [sic]

---

[4] Appendix C to 20 C.F.R. § 718 provides three tables setting the qualifying oxygen levels for particular carbon dioxide levels: one for arterial blood-gas studies performed up to 2,999 feet above sea level; another for 3,000 to 5,999 feet above sea level; and a third for 6,000 feet or higher above sea level. For all three tables, if a miner's carbon dioxide level is above 50, any oxygen level is qualifying. App'x C to 20 C.F.R. § 718.

probably the exposure that you have the most exposure to, which in his case was clearly tobacco smoke." *Id.* at 214. "Dr. Farney felt that it was possible for [Fossat] to have lung disease related to coal dust exposure, but he thought the risk was relatively low" given the amount of time Fossat worked underground. *Id.* He further opined that "it was highly improbable to have coal dust related disease emerge years after stopping work otherwise." *Id.* at 236.

　　　3.　　　*Dr. Rosenberg*. Sunnyside also requested Dr. Rosenberg review Fossat's medical records, and he produced a report dated April 7, 2014. He concluded that Fossat did not have a totally disabling respiratory impairment from a primary pulmonary problem but nonetheless concluded that Fossat was disabled. Dr. Rosenberg stated that "the development of obstruction due to coal dust exposure after a miner leaves the mines is rare . . . ." *Id.* at 239. He further explained that although a combined effect of cigarette smoke and coal dust was possible, for Fossat, his coal dust exposure "would not be expected to have contributed any significant additive effect on the adverse effects from cigarette smoking." *Id.* at 221.

9

## B

Before the ALJ,[5] Sunnyside stipulated to Fossat's completion of fifteen years of coal mine employment but contested whether Fossat was totally disabled due to pneumoconiosis arising out of his coal mine employment. Sunnyside also objected to the admission of a supplemental report from Dr. Gagon that the OWCP obtained pursuant to an OWCP pilot program in which the physician who conducted the initial OWCP-sponsored evaluation rebuts medical evidence presented by an employer.

The ALJ admitted the supplemental report and concluded that Fossat was totally disabled based on Fossat's qualifying arterial blood gas studies and the medical opinions of Drs. Gagon and Farney. The ALJ further concluded that Sunnyside failed to disprove legal pneumoconiosis or establish that no part of Fossat's respiratory disability was due to coal dust. Thus, Sunnyside failed to rebut the presumption, and Fossat was awarded benefits.

---

[5] Fossat filed for benefits in 2013, and the OWCP issued a proposed decision awarding benefits in 2015. Sunnyside requested a hearing, and an ALJ then awarded benefits. Sunnyside appealed that decision to the Board. Following a remand to the original ALJ and another Sunnyside appeal to the Board (for reasons not relevant to this appeal), the matter was finally remanded to ALJ Evan H. Nordby, who issued the decision at issue in this petition for review.

Following the ALJ's decision, Fossat passed away, and his widow pursued his claim on behalf of his estate. Sunnyside appealed to the Board but later requested the appeal be dismissed as premature because Fossat had moved for the ALJ to amend his award onset date. The ALJ granted the motion, Sunnyside appealed to the Board again, and the Board affirmed. The Board did not address whether the ALJ erred in admitting Dr. Gagon's supplemental report, reasoning that Fossat also established total disability through Dr. Farney's opinion. Sunnyside then filed a petition for review with this Court.

## III

## A

For questions of law, we review the Board's decision de novo. *Antelope*, 743 F.3d at 1341. We give no deference to the Board's interpretation of the statute, the BLBA. *Lukman v. OWCP*, 896 F.2d 1248, 1251 (10th Cir. 1990). Neither is the OWCP's interpretation of statutes entitled to deference. *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2261 (2024).

For questions of fact, our review is formally of the Board's decision, but we focus our analysis on the factual findings of the ALJ. *Energy W. Mining Co.*, 857 F.3d at 822. "[W]e do not reweigh the evidence," and it is "the sole province of the ALJ" to weigh conflicting medical evidence. *Spring Creek Coal Co. v. McLean ex rel. McLean*, 881 F.3d 1211, 1217 (10th Cir.

11

2018) (quoting *Antelope*, 743 F.3d at 1341). We refrain from doing so because "[w]here medical professionals . . . disagree[], the trier of fact is in a unique position to determine credibility and weigh the evidence." *Antelope*, 743 F.3d at 1341 (alterations in original) (quoting *Hansen v. OWCP*, 984 F.2d 364, 370 (10th Cir. 1993)).

As such, our judicial review is "limited" to whether, based on the record as a whole, "substantial evidence supports the factual findings of the ALJ." *Spring Creek*, 881 F.3d at 1217 (quoting *Westmoreland Coal Co. v. Stallard*, 876 F.3d 663, 668 (4th Cir. 2017)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hansen*, 984 F.2d at 368 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

**B**

**1**

When we review the language of a statute, it "is not merely an exercise in ascertaining 'the outer limits of [a word's] definitional possibilities.'" *FCC v. AT&T Inc.*, 562 U.S. 397, 407 (2011) (alteration in original) (quoting *Dolan v. Postal Serv.*, 546 U.S. 481, 486 (2006)). "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979).

Context is also important. A word "gathers meaning from the words around it." *Jarecki v. G. D. Searle & Co.*, 367 U.S. 303, 307 (1961) (explaining "[t]he maxim noscitur a sociis, that a word is known by the company it keeps, while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress"). "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because the same terminology is used elsewhere in a context that makes its meaning clear . . . or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law . . . ." *United Sav. Assoc. of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988).

"[T]wo well-settled principles of statutory interpretation" are (1) that "Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another," and (2) that "we are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law." *Republic of Sudan v. Harrison*, 587 U.S. 1, 12 (2019) (first quoting *Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 391 (2015); and then quoting *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 837 (1988)). The broader statute may also inform a term's meaning because "there is a presumption

13

that a given term is used to mean the same thing throughout a statute, a presumption [that is] surely at its most vigorous when a term is repeated within a given sentence." *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 456 (2012) (quoting *Brown v. Gardner*, 513 U.S. 115, 118 (1994)).

After conducting this analysis, if the text of the statute is clear, "reliance on legislative history is unnecessary." *Id.* at 458–59 (quoting *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 236 n.3 (2010)).

**2**

With these legal principles in mind, we turn to the merits of the appeal. Sunnyside argues: (1) Fossat does not qualify for the rebuttable presumption based on fifteen years of work in an underground coal mine because Fossat was not underground for at least fifteen years, and (2) as such, Fossat must show the conditions of his above-ground employment were substantially similar to the conditions of an underground coal mine.

Starting with his first proposition, at issue is whether Fossat's employment constitutes fifteen years of work in an underground coal mine. As previously stated, Fossat worked as a coal miner for twenty-four years, ten years below ground and fourteen years above ground. For purposes of the rebuttal presumption, "'coal mine' means an area of land and all structures, facilities, machinery, tools, equipment, shafts, slopes, tunnels,

14

excavations, and other property, real or personal, placed upon, under, or above the surface of such land by any person . . . ." 30 U.S.C. § 802(h)(2). Thus, contrary to Sunnyside's assertions, the BLBA's definition of a coal mine, which applies to all coal mines, includes structures upon or above the surface.

Sunnyside's reading also improperly implies that while Fossat was below ground, his employment was in an underground coal mine, but while he was above ground, his employment was in a coal mine other than an underground mine. Yet Fossat worked at a single mine throughout his employment; one mine did not become two simply because Fossat was above ground for part of his employment there. Neither does the nature of the mine — surface or underground — change depending on Fossat's location. *See Carcieri v. Salazar*, 555 U.S. 379, 391 (2009) (A word's "susceptibility . . . to alternative meanings" "'does not render the word . . . ambiguous,' particularly where 'all but one of the meanings is ordinarily eliminated by context.'" (quoting *Deal v. United States*, 508 U.S. 129, 131–32 (1993)).

Sunnyside likewise argues that Congress's use of the preposition "in" within the rebuttable presumption provision shows that Fossat must be underground to qualify for the rebuttable presumption without a showing of substantial similarity in conditions. *See* 30 U.S.C. § 921(c)(4) (If a miner "was employed for fifteen years or more *in* one or more underground coal

15

mines, and . . . if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis." (emphasis added)). However, the substantially similar provision found in the same sub-section, which applies to surface miners, provides for "a miner's employment *in* a coal mine other than an underground mine." *Id.* (emphasis added). The BLBA uses the word "in," therefore, to refer to miners who work at surface mines. Given the "presumption that a given term is used to mean the same thing throughout a statute," the preposition "in" does not preclude above-ground miners working in an underground coal mine from qualifying for the rebuttable presumption without a showing of substantial similarity. *See Mohamad*, 566 U.S. at 456 (quoting *Brown*, 513 U.S. at 118); 30 U.S.C. § 921(c)(4).

Such an understanding of the word "in" is consistent with the ordinary and common meaning of "in" when "used as a function word to indicate location or position in space or in some materially bounded object." In, Websters Third New International Dictionary 1139 (Philip Babcock Gove ed., 1971); *see Perrin*, 444 U.S. at 42 ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."). In this context, "in" indicates Fossat's position within the bounds of a coal mine, including

16

"an area of land and all structures, facilities, machinery, tools, equipment, shafts, slopes, tunnels, excavations, and other property, real or personal, *placed upon, under, or above the surface* of such land by any person . . . ." 30 U.S.C. § 802(h)(2) (emphasis added).[6] Thus, Fossat proved he was employed for fifteen years or more in one or more underground coal mines.

### 3

Although we could rest our opinion solely upon the reading of the statute set forth above, a review of the legislative purpose of the BLBA, even if unnecessary, also supports our reading of the statute. This Court has determined that Congress's purpose in enacting the BLBA, including the causation standard used to rebut the presumption, is "broad[ly] remedial" and that "because the BLBA 'is intended to be remedial in nature, . . . doubts should be resolved in favor of the disabled miner or his or her survivors.'" *Consolidation Coal Co. v. OWCP*, 864 F.3d 1142, 1151 (10th Cir. 2017) (second alteration in original) (quoting *Bridger Coal Co. v. OWCP*,

---

[6] Relying on *Chevron, U.S.A., Inc. v. Natural Resource Defense Council*, 467 U.S. 837 (1984), the Fourth and Sixth Circuits have held that the regulatory definition of an underground coal mine is reasonable. *Island Creek Ky. Mining v. Ramage*, 737 F.3d 1050, 1058 (6th Cir. 2013); *Kanawha Coal Co. v. OWCP*, 539 F. App'x 215, 218 (4th Cir. 2013). The Board, in a decision pre-dating *Chevron*, has also determined that the regulatory definition is consistent with the statute. *Alexander v. Freeman United Coal Mining Co.*, 2 Black Lung Rep. (Juris) 1-501–02 (Ben. Rev. Bd. 1974). In reaching our decision, we do not rely on *Chevron*, which has been overruled by *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024).

669 F.3d 1183, 1190 (10th Cir. 2012)). Our understanding of Congress's

purpose in passing the law is verified by a Senate Report from the Labor

and Public Welfare Committee commenting on a piece of legislation earlier

passed by the House of Representatives. The Senate Report states:

> Under the current law, the miners who have worked their entire
> adult lives at above ground facilities of an underground coal
> mine are eligible for benefits if they are totally disabled by coal
> miners pneumoconiosis but those who may have worked their
> entire adult lives at even dustier above ground facilities of
> surface mines are not eligible, even if they have complicated
> pneumoconiosis. This is grossly unfair and was not intended by
> the legislation passed by the Senate in 1969. The first Black
> Lung Benefits legislation, approved by a roll call vote of 90-0 in
> the Senate would have applied to all coal miners. Unfortunately,
> that provision was lost in the conference of the two Houses. The
> Committee amendment remedies this unfair treatment.
>
> Where the possibility of the disease exists, a miner should not
> be denied the benefits of the black lung program because of
> circumstance—simply because he has always worked above the
> ground rather than below it. This provision would correct the
> inequity by striking the word 'underground' from the present
> law, so that the program would apply to all coal miners,
> regardless of the physical characteristics of the mine.

S. Rep. No. 92-743, at 2305, 2326–27 (1972).

This excerpt indicates the Senate's awareness of the benefits afforded

to miners working physically above ground at an underground coal mine in

comparison with miners working at surface mines. Congress's response was

not to take away the benefits to miners working physically above ground at

an underground coal mine. Rather, Congress made miners working at

18

surface mines also eligible for benefits. As such, the legislative purpose supports our reading of the statute, which in turn renders a decision in favor of Fossat on this question.

## C

### 1

Regarding the disability argument, Sunnyside stipulated to Fossat's completion of fifteen years of coal mine employment but contested whether Fossat was totally disabled due to pneumoconiosis arising out of his coal mine employment. The ALJ concluded that Fossat was totally disabled based on the arterial blood gas studies and the medical opinions of Drs. Gagon and Farney.

Sunnyside's arguments taking issue with the ALJ's application of the rebuttable presumption likewise fail. First, Fossat need not show regular dust exposure to qualify for the fifteen-year presumption. A showing of substantial similarity in conditions is only necessary for a miner employed in a coal mine other than an underground coal mine, *see* 30 U.S.C. § 921(c)(4), which we disposed of in the preceding section.

Second, the ALJ did not impermissibly place the burden of establishing total respiratory disability on Sunnyside, thereby creating a "non-existent disability presumption." Aplt. Br. at 44. A review of the ALJ's decision shows that he was merely citing a regulation regarding how a

miner may establish total disability. *See* 20 C.F.R. § 718.204(b)(2) ("In the absence of contrary probative evidence, evidence which meets the standards of either paragraphs (b)(2)(i) [pulmonary function tests], (ii) [arterial blood-gas tests], (iii) [cor pulmonale with right-sided congestive heart failure], or (iv) [physician's conclusion that a respiratory or pulmonary condition precludes employment] of this section shall establish a miner's total disability."). In addition, the ALJ twice stated that a claimant bears the burden of establishing total disability. The ALJ also correctly applied that burden when he determined that (1) all the arterial blood gas studies produced qualifying values, (2) multiple physicians provided the opinion that Fossat was unable to work, and (3) Dr. Farney opined Fossat was disabled from work due to his respiratory condition.

**2**

Turning now to the supplemental medical report. To start, we reiterate that our precedent provides that this Court's review includes whether the legal conclusions of the Board *and* the ALJ are "rational and consistent with the applicable law." *Spring Creek*, 881 F.3d at 1217 (quoting *Westmoreland*, 876 F.3d at 668). Sunnyside is incorrect, therefore, that the OWCP's arguments regarding the supplemental report should be based on the ALJ's decision only. The OWCP is permitted to make arguments based on, and by consequence seek judicial review of, the Board's decision as well.

Our precedent also provides that when reviewing the decisions of the Board and the ALJ, we consider harmless error. *Antelope*, 743 F.3d at 1347. We have stated as follows:

> We do not decide whether the rebuttal limitations apply to [the coal company] because any error in the ALJ's invocation of the rebuttal limitations was harmless. *See* 5 U.S.C. § 706(2)(F) ("[D]ue account shall be taken of the rule of prejudicial error.") . . . . After careful review of the record and the ALJ's opinion and reasoning, we conclude the rebuttal limitations did not affect the outcome. The ALJ did not limit [the coal company's] evidence, and any alleged error was harmless because [the claimant] would have prevailed even without the rebuttal limitations."

*Id.* at 1347–48.

Because the ALJ's conclusions were supportable without the supplemental report, the Board did not address on the merits whether the ALJ erred in admitting the supplemental report. Notably, Sunnyside does not proffer any argument that the ALJ relied on something in the supplemental report that was not supported by other evidence. Rather, without citing any authority, it argues that "the 'harm' inquiry centers on the failed agency process, itself," and that "when an agency disenfranchises stakeholders like Sunnyside by dispensing with APA formalities, the resulting prejudice is innate, obvious, and undeniable." Reply Br. at 22. But that is not the legal standard; in fact, any alleged error is harmless if the claimant would have prevailed regardless. *Antelope*, 743 F.3d at 1348.

21

Such is the case here, where Dr. Farney determined that Fossat had a totally disabling respiratory or pulmonary impairment. In other words, even without the report, the outcome is the same. Because the ALJ's conclusions were supportable without the supplemental report, we need not address whether the supplemental report was authorized by the regulations or violated the Administrative Procedure Act.

**3**

We agree with the ALJ's conclusions that Sunnyside failed to (1) disprove legal pneumoconiosis or (2) establish that no part of Fossat's respiratory disability was due to coal dust. We reemphasize that "we do not reweigh the evidence," and it is "the sole province of the ALJ" to weigh conflicting medical evidence. *Spring Creek*, 881 F.3d at 1217 (quoting *Antelope*, 743 F.3d at 1341). Our judicial review is "limited" and pertains to whether, based on the record as a whole, "substantial evidence supports the factual findings of the ALJ." *Id.* (quoting *Westmoreland*, 876 F.3d at 668). Accordingly, we will not address Sunnyside's arguments that ask us to reweigh the evidence, namely, those regarding Dr. Rosenberg's methods and conclusions; the x-ray readings; and the ALJ's discussions of the additive effects of coal dust and cigarette smoke, the use of general statistics, and the preamble to the BLBA regulations. Finally, we will not address Sunnyside's issues with the ALJ's analysis of Dr. Gagon's opinions

22

because total disability was also established by Dr. Farney and the arterial blood gas studies. These studies showed high enough carbon dioxide levels to qualify at any elevation, *see* App'x C to 20 C.F.R. § 718:

| Exhibit No. | Date | Physician | pCO2 | pO2 | pH | Rest/exercise | Qualifying |
|---|---|---|---|---|---|---|---|
| DX 13 | 10-18-09 | Potter | 72 | 134 | 7.28 | At rest | Yes |
| DX 13 | 10-18-09 | Potter | 64 | 134 | 7.32 | At rest | Yes |
| DX 10[6] | 9-17-13 | Gagon | 55 | 52 | 7.36 | At rest | Yes |
| DX 15 | 3-13-14 | Farney | 68 | 57.7 | 7.32 | At rest | Yes |
| CX 1 | 3-7-16 | Potter | 62 | 40 | 7.36 | At rest | Yes |
| CX 9* | 1-13-17 | Potter | 76.2 | 61 | 7.33 | At rest | Yes |
| CX 9* | 1-13-17 | Potter | 76.0 | 49 | 7.31 | At rest | Yes |
| CX 9* | 1-12-17 | Potter | 73.6 | 200 | 7.31 | At rest | Yes |

Aplt. App'x I at 208. The above table is the ALJ's summary of the arterial blood gas studies, *all* of which established Fossat's disability. The ALJ also provided in his evidentiary summary and legal discussion that Dr. Farney, Sunnyside's expert, concluded Fossat was disabled from work due to his respiratory failure. *Id.* at 213, 229. The ALJ's conclusion that Fossat was disabled was supported by substantial evidence, and the remainder of Sunnyside's arguments asks us to reweigh the evidence — a task beyond our limited role. *See Spring Creek*, 881 F.3d at 1217.

## IV

The petition for review is **DENIED**.